Sandra M. Okum, Petitioner *v.* Commonwealth of Pennsylvania, Unemployment Compensation Board of Review, Respondent.

Argued September 12, 1983, before Judges ROGERS, WILLIAMS, JR. and CRAIG, sitting as a panel of three.

*Joseph K. Pierce, Tive, Hetrick & Pierce,* for petitioner.

*Charles Hasson,* Associate Counsel, with him *James K. Bradley,* Associate Counsel, and *Richard L. Cole, Jr.,* Chief Counsel, for respondent.

OPINION BY JUDGE CRAIG, October 4, 1983:

In this unemployment compensation appeal, the referee and the Unemployment Compensation Board of Review denied benefits on the ground that discharge of the claimant was warranted by her willful misconduct consisting of an insubordinate remark to her superior. The claimant, Sandra Okum, seeks a remand for a further hearing.

The key question is whether or not the compensation authorities erred as a matter of law in excluding, on the ground of lawyer-client privilege, evidence which, the claimant submits, would tend to show that her superior actually discharged her for being a "security risk," even before she uttered the remark in question.

The claimant was a closing coordinator and secretary for the Pennsylvania Housing and Finance Agency in its legal department, one of the eight divi-

sions of that agency. Because the claimant had a relationship with an outside attorney who represented former employees in a legal action against the agency, the claimant and her superior, the chief counsel of the legal division, had several discussions concerning the possibility of a conflict of interest and the possible transfer of the claimant to another division. Finally, the chief counsel, a Mr. Dunbar, requested that the claimant report to his office. During the course of the conversation, the claimant became angry and referred to him as a "political hack," loudly enough to be heard by other employees.

There is no dispute concerning the findings which embody the foregoing history.

The disputed findings are those which state (1) that the claimant was discharged because of her utterance, (2) that the chief counsel said nothing which provoked her comment, and (3) that the chief counsel did not discharge her for any reason related to her association with the opposing attorney.

The claimant does not deny calling the chief counsel a "political hack," nor does she deny that such an address to her superior could be the basis of a discharge for willful misconduct consisting of insubordination. However, the claimant, maintaining from the outset that the chief counsel had settled upon her discharge as a "security risk" before the confrontation, had served a subpoena duces tecum upon the chief counsel to produce

> [a]ny letter to or from Robin Ross of the Governor's office which authorizes Harold Dunbar to hire and fire personnel within the legal division of the Pennsylvania Housing & Financing Agency.

At the referee's hearing, the claimant's counsel tried to obtain such correspondence from Mr. Dunbar and sought to elicit from him and his secretary testimony

concerning it. Although Mr. Dunbar acknowledged that he had "wanted some clarification" as to his "authority with respect to hiring and firing employees," he and departmental counsel both raised the attorney-client privilege with respect to the evidence sought, and the referee and board excluded it.

Our conclusion is that the exclusion of that evidence was error as a matter of law, and that the claimant is entitled to a further hearing with the requested evidence available.

The lawyer-client privilege makes "counsel" incompetent to testify to "confidential communications" made by "his client," and it prohibits compelling the "client" to disclose the communications, 42 Pa. C. S. §5928. Of course, the privilege requires the existence of a relationship in which an attorney is acting in his professional capacity as a lawyer, see Fogg's Estate, 249 Pa. 63, 94 A. 453 (1915); the key is whether there has been a professional consultation with an attorney, who acts or advises as such. Alexander v. Queen, 253 Pa. 195, 202, 97 A. 1063, 1065 (1916).

The board's brief here does not claim that any correspondence or communications between Mr. Dunbar, administrative head of the legal division of the Pennsylvania Housing and Finance Agency, and Mr. Ross, a deputy general counsel in the Governor's office, constituted communications within the relationship of client and attorney. Although both Mr. Dunbar and Mr. Ross are members of the bar, the record is clear that neither of them were functioning as attorneys here, nor as clients. The relationship was that of an administrator, Mr. Dunbar, seeking clarification of his administrative authority from one occupying an administrative position higher in his hierarchy.

Moreover, even if Mr. Dunbar be regarded as being in the role of a client, the privilege is not applied

where disclosure of the evidence would not be inimical to the interest of the client. *Cohen v. Jekintown Cab Co.*, 238 Pa. Superior Ct. 456, 357 A.2d 689 (1976). Although disclosure of the evidence might affect the interests of the agency, the board's brief makes no claim that any interest of Mr. Dunbar as client could be affected.

Hence, there was no legally sufficient basis for excluding documentary and testimonial evidence concerning the questioned correspondence, which could indicate that a termination of the claimant for other reasons was a foregone conclusion before her angry remark. We will remand the case for further hearing and findings pursuant thereto, with evidence as to correspondence and communications between Mr. Dunbar and Mr. Ross not to be excluded.

### Order

Now, October 4, 1983, this case is remanded to the Unemployment Compensation Board of Review, for a further hearing, in such manner as the board may direct, to be conducted without excluding documentary evidence or testimony concerning correspondence and communications between Mr. Harold Dunbar and Mr. Robin Ross. The claimant's subpoena duces tecum shall be obeyed.

Jurisdiction relinquished.